544 So.2d 1276 (1989)
SAM BROUSSARD TRUCKING CO., INC., and Frank B. Hall & Company, Inc.
v.
AMERICAN SOUTHWEST UNDERWRITERS CORPORATION, Carriers Insurance Company, and Carriers Casualty Companies of Des Moines, Iowa.
No. 88-CA-1980.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
*1277 David L. Campbell, Joseph L. Spilman, III, of Deutsch, Kerrigan & Stiles, New Orleans, La., (Attorneys for Plaintiffs-Appellants) (Sam Broussard Trucking Co., Inc., and Frank B. Hall & Company, Inc.)
Jack C. Fruge, of Fruge and Dejean, Lafayette, La., (Attorneys for Plaintiff-Appellant) (Sam Broussard Trucking Co., Inc.).
Frederick T. Hass, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., (Attorneys for Defendant-Appellee) (Carriers Insurance Company In Liquidation).
Henry G. Terhoeve, Matthews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, La., (Attorneys for Defendant by Intervention-Appellee) (Louisiana Insurance Guaranty Association).
Before KLEES, BYRNES and WARD, JJ.
KLEES, Judge.
Plaintiffs appeal the trial court's dismissal of their action to reform an insurance policy. Plaintiffs are Sam Broussard Trucking Company, Inc. (hereinafter "Broussard"), the insured, and Frank B. Hall & Company, Inc. (hereinafter "Hall"), Broussard's insurance broker. In their petition, they allege that the policy covering Broussard's comprehensive vehicular liability should be reformed because, "through inadvertence and unintended clerical error," the policy shows "Carriers Casualty Company" as the insurer rather than "Carriers Insurance Company." Defendants in the suit are Carriers Casualty, Carriers Insurance, American Southwest Underwriters (hereinafter "ASU"), the managing underwriting agent for both Carriers Insurance and Carriers Casualty, and the Louisiana Insurance Guaranty Association (hereinafter "LIGA"), which intervened as a defendant. After hearing the evidence, the trial judge found that reformation is not warranted because it was the parties' original intention that the policy be issued in the name of Carriers Casualty. We affirm.
Carriers Casualty is a wholly owned subsidiary of Carriers Insurance, with the two companies having the same officers as well as the same corporate headquarters in Des Moines, Iowa. Carriers Insurance is licensed and admitted to do business in Louisiana; Carriers Casualty is not. Both companies are currently in liquidation. At all times pertinent, ASU had the authority to bind both companies. The underlying reason behind Broussard's and Hall's attempt to reform the policy is that if coverage were with Carriers Insurance, the Louisianaadmitted company, the insured would be protected against the company's insolvency by LIGA, which administers a guaranty fund for that purpose.
There were only three witnesses in the lower courtDanny Jones of Broussard and Jerry Burklew of Hall, whose testimony was by deposition, and Gene Ladd of ASU, who was the only witness to testify live at the trial.
*1278 The policy in question, No. ATA001928, is printed on a form used by "the Carriers Companies" and is signed by David Cavanaugh and John Ruan in their respective capacities as secretary and president of both Carriers Insurance and Carriers Casualty. At the top of the policy, in the left-hand corner, is printed "Carriers Insurance Company" and in the right-hand corner, "Carriers Casualty Company," with a box preceding each. The box for Carriers Casualty is checked.
The law provides that an insurance policy may be reformed because of an error which results in the failure of the policy to set forth the true understanding and agreement of the parties. Hardin Bag Co., Inc. v. Milwaukee Mechanics' Ins. Co., 160 La. 439, 107 So. 298 (1926). Therefore, the sole issue at trial was the intention of the three partiesBroussard, Hall, and ASUat the time the contract was made as to which company was to be the insurer.
Danny Jones, an employee of Broussard who handled insurance matters, testified that Hall was selected as a broker based on its response to bid specifications on coverage and price put forth by Broussard. Jones dealt only with Hall personnel and had no contact whatsoever with ASU. At the time the insurance was procured in April of 1985, Jones did not even know the distinction between an insurance company admitted in Louisiana, such as Carriers Insurance, and one which was not admitted but which could insure interests in Louisiana on a "surplus lines" basis, such as Carriers Casualty. He only learned of the distinction in October of 1985, when Broussard began receiving invoices from Hall containing amounts designated as a state tax, which Jones knew Broussard had not previously been paying. After inquiring at Hall, he found out that the tax was charged to non-admitted insurance companies who did business in Louisiana on a surplus lines basis. Broussard refused to pay the tax because it believed that its insurance was with a Louisianaadmitted company. In November of 1985, Jones learned for the first time that Broussard's insurer was Carrier Casualty, which was not licensed in Louisiana.
Jones also stated that he received an insurance binder from Hall in May or June of 1985 showing "Forum Insurance Company" as the insurer; he later received a corrected binder which showed "Carriers Insurance Company" as the insurer. On this point, Jones' testimony did not comport with the corrected binder itself, placed in evidence, which shows Carriers Casualty as the insurer. Finally Jones stated that Broussard did not receive the actual policy until January of 1986, sometime after it had received the notice stating that the policy was to be cancelled.
Jerry Burklew, a former vice president of Hall who was in charge of the Broussard account, stated that a normal "submission", a document filed by Hall with an insurance company requesting coverage, does not address whether or not the coverage must be with a Louisianaadmitted company. When asked whether it was his understanding that all trucking companies (operating in Louisiana) had to be insured by Louisianaadmitted insurers, Burklew responded that it was his understanding that "all filings have to be accomplished by admitted companies." This statement refers to filings made with the Interstate Commerce Commission and various state public service commissions.
Burklew dealt primarily with Gene Ladd, the head of the underwriting department at ASU. According to Burklew's testimony, at the time he was marketing Broussard's policy, the fact that it had to be with an admitted company was discussed with Ladd, but Burklew could not recall the date or time of the discussion or any particularities concerning it. He went on to explain that Hall previously had placed insurance for about five other trucking companies with ASU, and that the program had always been the same one Ladd had outlined for him in September or October of 1984 that is, using Carriers Insurance as the primary carrier and Carriers Casualty as the excess carrier. This same program was the one Hall proposed to Broussard. Burklew admitted that Ladd had not told *1279 him that this particular program would be the only one used by ASU. Burklew also stated that the prior five placements had not all been for Louisiana trucking companies, but that some of them had been for Texas companies. When he was again asked what he recalled about his discussion with Ladd concerning the fact that Broussard's insurance had to be with an Louisianaadmitted company, Burklew said:
A. I really don't recall, other than that.
I mean, we discussed how the program it really wasn't, you know, discussed that it had to be with an admitted carrier in the State of Louisiana, but that is how the program that we had done the five pieces of business onthat is how it was structured, with the admitted carrier being primary and the unthe non-admitted company being excess.
Burklew stated that he first realized that Broussard's primary policy was with Carriers Casualty rather than Carriers Insurance when an assistant of his pointed out to him that the invoices from ASU showed a surplus lines tax. At this point, he contacted Mr. Ladd and asked him why there had been a change as to the primary carrier. Ladd said he would check. Two or three days later, Ladd had lunch with Burklew and told him it was a "clerical" problem, in that Louisiana required that a substantial amount of paperwork be filed by Louisianaadmitted insurers, and from a clerical standpoint, "it did not make sense" for ASU to use the Louisianaadmitted company as primary carrier for a Louisiana insured. Burklew stated that although he made a "substantial effort" to get ASU to change the policy to Carriers Insurance, Mr. Ladd refused to do so. At this point, which was six weeks to two months after the policy took effect, Burklew decided, apparently without consulting anyone at Broussard, not to terminate the coverage.
Burklew also stated that after Broussard had accepted the proposal submitted by Hall, which showed Carriers Insurance as the primary carrier, he verbally bound the coverage with ASU. The first documentary evidence of coverage received by Hall was an insurance binder, placed into evidence, which clearly shows "Carriers Casualty" as the sole insurer. Although Hall presumably received this binder before it began receiving invoices, Burklew did not notice the different insurer until the problem of surplus lines taxes came up. Rather than sending this binder to Broussard, Hall drew up its own binder. Burklew stated that although he was not responsible for drawing up the binders that Hall issued to Broussard, "everything he saw" that came to Hall from ASU had Carriers Insurance Company listed as the name of the insurer. Prior to his deposition, he had never seen the binder issued by Hall to Broussard which gave "Forum Insurance Company" as the insurer and which was later corrected.
Burklew also denied having any knowledge of a letter sent by another Hall employee, Rubin Witterman, to Broussard on January 16, 1986, stating that he was enclosing the original policy, "which should have been sent to [Broussard] months ago." Finally, Burklew said he had never before seen a letter written to Danny Jones by Rubin Witterman on May 31, 1985, two months after the policy became effective, which letter lists "Carriers Casualty" as the insurer.
The only witness to testify live at trial was Gene Ladd, former executive vice president of ASU. Counsel for Broussard and Hall objected to Ladd's testimony because his deposition had been taken in anticipation that he would not testify. The trial judge allowed in both the deposition and the live testimony of Mr. Ladd. Upon reviewing same, we do not find them to be in conflict with each other, as plaintiffs claim.
Ladd stated that ASU had the authority to bind Carriers Insurance and Carriers Casualty from September 1984 until November 1985, when Carriers Insurance went into liquidation. He stated that the program consisting of Carriers Insurance as the primary carrier for $750,000 and Carriers Casualty as the excess for $250,000 was basically used for the state of Texas. Of of all the policies written this way (between 400 and 1,000), less than 50 *1280 were for Louisiana insureds. At some point in time, which Ladd could not pinpoint, ASU stopped using Carriers Insurance Company as the primary insurer for Louisiana insureds because state policy required heavy documentation to be filed by Louisianaadmitted insurers. Although he could not recall the exact date, Ladd stated in both his deposition and at trial that he felt sure ASU had made this decision before the Broussard policy was issued.
Ladd stated unequivocally that it was always ASU's intention to issue Broussard's coverage in the name of Carriers Casualty. When asked to explain why ASU made the required filings with the Louisiana Public Service Commission and with the ICC in the name of Carriers Insurance, Ladd replied that ASU's practice was to issue all such filings in the name of Carriers Insurance, which was licensed in the various states, regardless of which company was the actual insurer. Ladd said that this was ASU's common practice because although a non-admitted company like Carriers Casualty could legally do business in Louisiana on a surplus lines basis, it could not make the required filings with the ICC or the state commission. Ladd stated that he had never represented in a filing that an insured had coverage when the insured actually did not, but that it was common for one company to front for another in these filings. It was also ASU's practice to do all loss runs in the name of Carriers Insurance, regardless of the actual insurer.
Ladd felt sure that Jerry Burklew had been advised of both the name of Broussard's insurer and the premium amount prior to the effective date of the policy, but could not remember exactly when he had informed Burklew. He then admitted that it was possible, but not probable, that this discussion with Burklew had not taken place until after a question had arisen about the surplus lines taxes shown on Hall's bill.
Ladd identified the original insurance binder issued by ASU for Broussard showing Carriers Casualty as the insurer with a policy limit of $1,000,000. This binder was sent to Hall as the broker's evidence of the coverage confected. According to Ladd, the binder is prepared before the policy and is usually sent to the broker before the policy's effective date. According to Ladd, the reason that many brokers then issue their own binder to the insured, as Hall did, is to avoid having the amount of their commission shown on the binder. When ASU received a copy of Hall's binder to Broussard showing "Forum Insurance Company" as the carrier, Ladd sent a memo to Hall telling the broker to correct the name of the insurance company to "Carriers Casualty", after which Hall prepared an amended binder. Ladd also confirmed that Burklew had asked him to change the insurer to Carriers Insurance after the policy had become effective, but that he had refused because the filing requirements in Louisiana were too cumbersome and ASU was not equipped to comply with them. Ladd then identified the notice sent by ASU stating that Broussard's policy with Carriers Casualty would be cancelled as of February 14, 1986 due to the insolvency of the insurer.
The final portion of Ladd's testimony concerned a letter he wrote to Jerry Burklew on May 9, 1986 which seemingly contradicts his testimony concerning ASU's intent. In that letter, Ladd, who was no longer employed by ASU when he wrote it, stated that ASU had always intended that Carriers Insurance be the insurer on Broussard's policy. In his testimony, Ladd admitted that the statement in the letter concerning ASU's intent was "incorrect for both [dates] 4-1-85 and 5-9-86." However, he had written the letter in an effort to help Burklew, a personal friend, get the LIGA guaranty fund to cover Broussard's claims.
In addition to the testimony of the three witnesses, significant documentary evidence in the record includes the policy itself; the various insurance binders issued by ASU and Hall; the state PSC and federal ICC filings; Burklew's letter to Broussard in November 1985 when he first notified Broussard that its insurer was Carriers *1281 Casualty, not Carriers Insurance; and Ladd's May 9, 1986 letter to Burklew.
After reviewing all the evidence, we disagree with the trial judge's conclusion that "it was the intention of all the parties that policy No. ATA001928 be issued in the name of Carriers Casualty Company;" nevertheless, we believe the trial court was correct in refusing to reform the policy.
We find that it was always the intention of ASU to issue the policy in the name of Carriers Casualty, but that Broussard intended from the beginning to obtain coverage from a Louisianaadmitted company, as it had in the past. The broker, Frank B. Hall, apparently assumed, based on its prior dealings with ASU, that the breakdown for Broussard would again have Carriers Insurance as the primary insurer. However, there is nothing in evidence to show that ASU encouraged or confirmed this assumption. There is no evidence to show that the proposal Hall presented to Broussard came directly from ASU specifically for Broussard.
Moreover, Jerry Burklew of Hall did not specifically inform ASU prior to obtaining the coverage that it had to be with a Louisianaadmitted insurer. Then, although Burklew knew sometime in May that the coverage was not with an admitted company, he did not inform Broussard of this fact until November 1985. Under the circumstances, because the parties did not have the same intention, reformation of the contract is not warranted.
For their part, plaintiffs argue that as long as Broussard intended that its insurance be with a Louisianaadmitted company and Hall was aware of this intention, reformation is proper because ASU is bound by Hall's knowledge. In support of this contention, plaintiffs cite a line of cases holding that an insurer is bound by its agent's knowledge of the true intention of the policyholder as to the coverage desired, and if the agent negligently fails to secure such coverage, the policy will be reformed to reflect the policyholder's intention. See, e.g.: Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277 (1965), Youngblood v. Allstate Fire Ins. Co., 349 So.2d 462 (La.App. 3d Cir.1977); Herbert v. Breaux, 285 So.2d 829 (La.App. 1st Cir.1973); Urania Lumber Co. v. Insurance Co. of North America, 177 So.2d 640 (La.App. 3d Cir.1965); Maggio v. State Farm Mutual Automobile Ins., Co., 123 So.2d 901 (La.App. 1st Cir. 1960).
This principle is not applicable to the instant situation. In each of the cited cases, the agent was an individual employee or representative of the insurance company providing the coverage; therefore, it was logical that the agent's knowledge should have been imputed to the insurance company. In the instant case, however, the role of Hall is not at all comparable to that of an individual agent employed by an insurance company. Hall did not act as the agent of ASU, but as an independent broker hired by Broussard, the insured, to place Broussard's coverage. There is no basis upon which to impute Hall's knowledge to ASU. If Hall was negligent in failing to obtain the coverage requested by Broussard, Broussard may have an action against Hall for breach of fiduciary duty. In any case, reformation of the policy would not be warranted unless the intent of all the parties at the formation of the contract had been clearly the same.
Accordingly, for the reasons given, we affirm the judgment of the trial court dismissing this action for reformation at plaintiffs' cost.
AFFIRMED.