665 So.2d 16 (1995)
James J. BAILEY, III, Individually, and in His Capacity as Testamentary Executor of the Succession of Fairfax Foster Bailey, P. Foster Bailey, and Virginia Bailey Noland
v.
ROBERT V. NEUHOFF LIMITED PARTNERSHIP, Thomas H. Neuhoff Limited Partnership, E. Hal Dickson Limited Partnership, JBN Limited Partnership, James E. Taubert, SBS Oil Company, Je-Too, Inc., and Franks Petroleum, Inc.
No. 95 CA 0616.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
Writ Denied February 9, 1996.
*17 Huntington B. Downer, Jr., Houma, for Patterson Services.
J. Patrick Hennessy, Shreveport, for Franks Petroleum.
Lamont P. Domingue and W. Gerald Gaudet, Lafayette, for Blue Marlin Specialty Tools.
St. Paul Bourgeois, IV, Lafayette, for Hydraulic Well Control.
Wade D. Rankin, New Orleans, for Lexington Ins.
Charles A. Mouton, Lafayette, for London Insurers.
Before SHORTESS, PARRO and KUHN, JJ.
SHORTESS, Judge.
In March 1988, an underground blowout occurred in an oil well in St. Mary Parish. During work-over operations attempting to salvage the well, work strings supplied by Patterson Services, Inc. (Patterson), or Blue Marlin Specialty Tools, Inc. (Blue Marlin), parted, and the well was ultimately lost.
The successors to the lessors of the mineral leases involved (the Baileys) filed suit against the successors to the lessee, the Neuhoffs, and the operator of the well, Franks Petroleum, Inc. (Franks), alleging negligent operation of the well and seeking cancellation of the lease and damages for loss of royalties. The Neuhoffs then filed a third party demand against Patterson, Blue Marlin, Lexington Insurance Company (Lexington), and Hydraulic Well Control, Inc. Franks also filed a third party demand against Patterson. The third party demands of the Neuhoffs and Franks also named multitudinous insurance companies "subscribing to certain policies of insurance ... numbered HA556088 and HA55808" (the London insurers).
Lexington then filed a cross claim against the Baileys, the Neuhoffs, Franks, Patterson, and Blue Marlin seeking a declaratory judgment that it had no duty to defend or indemnify Blue Marlin. Meanwhile, the Baileys settled the main demand and assigned their rights to the Neuhoffs and Franks. Franks then intervened, asserting the Baileys' rights.
Lexington filed a motion for summary judgment contending it did "not owe obligations of indemnity or defense" to Blue *18 Marlin because it had no coverage. Blue Marlin responded with a cross motion for summary judgment, alleging "that, as a matter of law, the policy of insurance issued to Blue Marlin ... provides coverage and/or indemnity for any and all claims asserted against Blue Marlin ... and requires Lexington... to defend Blue Marlin ... against said claims."
The trial court treated the motions as cross motions on coverage and specifically held in written reasons that the "policy language broadly excludes coverage for all damages sought." The judgment denied the motion of Blue Marlin, granted the motion of Lexington, and granted the declaratory judgment sought by Lexington in its cross-claim, "relieving the said Lexington Insurance Company of all obligations of indemnity and defense for the claims asserted...." The judgment also dismissed all claims against Lexington by all other parties.
Blue Marlin moved for a new trial, which was denied. Blue Marlin, Franks, Patterson, and the London insurers (appellants) appeal the denial of Blue Marlin's motion for summary judgment, the denial of the motion for new trial, and the granting of Lexington's motion for summary judgment.

APPELLATE JURISDICTION
An appeal may be taken from a final judgment, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur. La.C.C.P. art. 2083. Generally, a judgment denying a motion for summary judgment is an interlocutory decree, and appellants herein do not contend irreparable injury will result because of the denial of Blue Marlin's motion. Thus, the judgment denying Blue Marlin's motion for summary judgment is not properly before us on this appeal.[1]
The denial of a motion for new trial is generally a non-appealable interlocutory judgment. However, the court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. Miller v. Chicago Ins. Co., 320 So.2d 134, 136 (La.1975); Core v. Winn-Dixie of Louisiana, 471 So.2d 240, 242, n. 3 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). Although this appeal is restricted to the issue of the propriety of granting Lexington's motion for summary judgment, we may consider the motion for new trial because it is directly related to the granting of Lexington's motion.
Whether the judgment granting Lexington's motion for summary judgment is appealable depends on our interpretation of Louisiana Code of Civil Procedure articles 966(D) and 1915(A). Article 966(D) permits summary judgment on the issue of coverage alone, but a 1992 amendment to Code of Civil Procedure article 1915[2] provides that such a judgment is not final. In Adams v. St. Tammany Parish, 93-0717, p. 2 (La.App. 1st Cir. 4/8/94), 636 So.2d 1003, 1004, wherein the trial court granted the plaintiff's motion seeking a declaration of coverage, this court dismissed the insurer's appeal for lack of jurisdiction.
Here, the opposite factual situation exists: the trial court found no coverage and dismissed all claims against Lexington. Article 1915(A)(1) provides that a judgment which dismisses a suit as to less than all of the defendants is final. Although a conflict between subsections A(1) and A(3) of article 1915 appears to exist, we conclude that the apparent conflict can be reconciled as follows: If the court finds there is coverage, then subsection A(3) applies to preclude an appealable judgment; however, if the court finds there is no coverage, then subsection A(1) applies to provide the basis for an appealable judgment. Accordingly, we find this summary judgment denying coverage and dismissing all claims against Lexington is a final appealable judgment.

Was Summary Judgment Properly Granted?
Appellants contend the trial court erred in granting summary judgment because: (1) *19 Lexington waived its coverage defense; (2) Lexington's policy was ambiguous; (3) Lexington failed to prove the damages for which Blue Marlin was sued were excluded; and (4) Blue Marlin reasonably expected coverage.

Waiver
At the original hearing, Blue Marlin contended Lexington had waived its coverage defense, citing Tate v. Charles Aguillard Insurance & Real Estate, Inc., 508 So.2d 1371 (La.1987). In Tate, the supreme court held an insurer could relinquish its right to exclude coverage through a knowing and voluntary waiver of the right. The court noted the burden of producing reliable proof of the waiver was on the insured. 508 So.2d at 1375.
Blue Marlin based its contention on allegations that in earlier suits in federal court arising from the same facts, Lexington retained counsel to represent Blue Marlin without formally reserving its right to deny coverage at a later date, but later denied coverage. The trial court apparently rejected this contention.
While the motion for summary judgment was under advisement, the supreme court rendered a decision in Steptore v. Masco Construction Company, 93-2064, p. 4 (La. 8/18/94), 643 So.2d 1213. In that case, the court held an insurer had waived its right to assert a coverage defense by retaining counsel to represent both it and its insured for six months, without first obtaining a non-waiver agreement to reserve its coverage defense, when it had knowledge of facts indicating lack of coverage under the policy. Appellants contend Steptore requires reversal of the summary judgment dismissing Lexington.[3]
Waiver is the intentional relinquishment of a known right, power, or privilege. It occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Steptore, 93-2064 at p. 4, 643 So.2d at 1216; Tate, 508 So.2d at 1373-1374. Notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. Steptore, 93-2064, p. 4, 643 So.2d at 1216.
The pleadings in this suit filed in state court do not show a waiver by Lexington. Upon being named as a third party defendant by the Neuhoffs as Blue Marlin's alleged insurer, Lexington filed a cross-claim seeking a declaratory judgment that it had no coverage. Blue Marlin and Lexington were represented by separate counsel at all times in the state court action.
Blue Marlin's waiver claim, however, is based on federal court actions filed prior to the state court suit. Copies of the federal court pleadings filed in the record reveal the following. Two suits in federal court arose from this well blowout, one filed by Franks and another filed by the Neuhoffs. In the suit filed by Franks, Blue Marlin was named in two separate third party demands, first by the London insurers, on December 26, 1989, and then by Patterson and its insurer on January 9, 1990. Patterson third partied Blue Marlin in the Neuhoffs' suit on January 24, 1991. Lexington was not named in either suit.
The law firm of Adams and Reese represented Blue Marlin in both federal suits. In a letter dated February 14, 1991, Lexington advised Blue Marlin that it had provided Blue Marlin with a defense through Adams and Reese, that an independent review of the policy showed no coverage due to the Oil Field Limitation Endorsement, that it was reserving its right to deny coverage, and that it would continue to provide Blue Marlin with a defense until there was a judicial declaration of no coverage. There is no evidence in the record, however, to show whether Blue Marlin was aware at the beginning of the litigation that an independent investigation *20 was being conducted as to coverage, whether Adams and Reese was aware it was representing only Blue Marlin and not Lexington, or whether Lexington's investigation into the coverage issue was conducted diligently and in a reasonable manner. Because of the numerous unresolved factual issues, it is impossible to determine whether Lexington's conduct was "so inconsistent with the intent to enforce the right [to deny coverage] as to induce a reasonable belief [by Blue Marlin] that [the right] had been relinquished." These genuine issues of material fact preclude the grant of summary judgment.
Because of our determination on the merits of the grant of summary judgment, we need not discuss whether the trial court abused its discretion in denying the motion for new trial.

Other Factual Issues
Questions regarding the alleged waiver are only a few of the many impediments to summary judgment in this case. For example, we have reservations about whether the policy is as clear and unambiguous as found by the trial court[4] and whether all of the damages claimed constitute "property damage" so as to be excluded by the Oil Field Limitation Endorsement. Insofar as appellants' argument regarding the reasonable expectations doctrine, if it is even applicable in this case,[5] it is impossible to determine from the deposition excerpts in the record whether Howard J. Cornay was an agent of the insured or the insurer, whether the cost of the Lexington policy was similar to premiums charged by other insurers offering full coverage, or whether the amount of the premium should have put Blue Marlin on notice that the coverage was limited.[6]

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment and declaratory judgment in favor of Lexington Insurance Company is reversed, and this case is remanded to the trial court for further proceedings. Lexington is cast for all costs of this appeal.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
I concur. The Steptore decision clearly precludes the trial court from granting the motion for summary judgment filed by Lexington. Additionally, Lexington's policy, which has been the focal point of litigation thus far, certainly is not a clear and unambiguous as the trial court determined.
NOTES
[1] We have the power to exercise our supervisory jurisdiction to review the denial of the motion for summary judgment, but we decline to do so in this case.
[2] Code of Civil Procedure article 1915 was amended by Acts 1992, No. 71, § 1.
[3] The trial court considered Steptore on Blue Marlin's motion for new trial but found it was not retroactive. We disagree with the trial court on this point. Steptore did not create new law; it simply further interpreted the doctrine of waiver as applied to insurers. Decisions which are merely interpretative apply both prospectively and retroactively. La.C.C. art. 6.
[4] Appellants contend the manner of delineating the exclusions, i.e., typing an "X" beside the exclusions made part of the policy, rendered the policy ambiguous. We note that the three-page endorsement containing the "Oil Field Limitations Endorsement" has no language explaining the meaning of the "X" marks in parentheses beside the exclusion numbers, e.g., whether the marks indicated those provisions were included or excluded. In Southwest Louisiana Grain v. Howard A. Duncan, Inc., 438 So.2d 215, 221 (La.App. 3d Cir.), writs denied, 441 So.2d 1224, 442 So.2d 447 (La.1983), cited by the trial court, the policy contained the following language: "An `X' in this box means that the Broad Form Property Damage coverage is amended...." Furthermore, the record does not reflect whether Blue Marlin was aware of the meaning of the "X" marks.
[5] Appellants seek to use the reasonable expectations doctrine to reform the policy based on the alleged representations of Cornay. That doctrine is to be used to determine the "reasonable expectations of the parties" when there is an ambiguity. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La. 1/14/94), 630 So.2d 759, 764. However, a unilateral misunderstanding is not sufficient to reform a policy. See Sam Broussard Trucking Co. v. American Southwest Underwriters Corp., 544 So.2d 1276, (La.App. 4th Cir.), writ denied, 548 So.2d 1247 (La.1989). Furthermore, cases interpreting Louisiana Revised Statute 22:628 have held that the representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy. See, e.g., Sharff v. Ohio Cas. Ins. Co., 605 So.2d 657, 661, (La.App. 2d Cir.), writ denied, 608 So.2d 196 (La.1992); Marsh v. Reserve Life Ins. Co., 516 So.2d 1311, 1314 (La.App. 2d Cir. 1987); see also 15 W. Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986 & Supp.1995).
[6] We note Eugene M. Coreil, Blue Marlin's representative, testified the policy was chosen because of its price.