690 So.2d 846 (1997)
Christopher A. ORILLION and Margie D. Orillion
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 96 CA 1131.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Writ Denied April 25, 1997.
*847 S. Alfred Adams, Baton Rouge, for Plaintiffs-Appellants.
Glen Scott Love, Baton Rouge, for Defendant-Appellee Government Employees Ins. Co.
Before SHORTESS, FOIL and GONZALES, JJ.
SHORTESS, Judge.
On December 15, 1993, Margie D. Orillion was involved in an automobile accident with Gregory Shane Rogers, a minor. She sued Rogers; his mother, Beverly Diane Rogers Piper; their liability carrier, Allstate Insurance Company; and Government Employees Insurance Company (GEICO), her uninsured motorist (UM) and medical payments (med pay) insurer. Her husband, Christopher A. Orillion, was also named as a plaintiff, although the petition contains no allegations he suffered damage as a result of the accident.
Mr. and Mrs. Orillion (plaintiffs) settled with Allstate, dismissing it and its insureds. Plaintiffs and GEICO then filed cross motions for summary judgment on the issue of UM coverage. The trial court found Mrs. Orillion had signed a valid UM rejection form. It then denied plaintiffs' motion, granted GEICO's, and dismissed plaintiffs' entire suit against GEICO. Plaintiffs appeal.
Plaintiffs contend the trial court erred in four respects: (1) in failing to grant their motion for summary judgment; (2) in concluding the UM waiver Mrs. Orillion signed was legally sufficient; (3) in failing to reform the policy because of mutual mistake; and (4) in dismissing the suit without considering the med pay claim.

DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
We shall not consider plaintiffs' complaint that the trial court should have granted their motion for summary judgment. An appeal may be taken from a final judgment, from an interlocutory judgment which may cause irreparable injury, or from a judgment reformed in accordance with a remittitur or additur. La. C.C.P. art 2083. Generally, a judgment denying a motion for summary judgment is an interlocutory decree. Bailey v. Robert V. Neuhoff Ltd. Partnership, 95-0616, p. 3 (La.App. 1st Cir. 11/9/95), 665 So.2d 16, 18, writ denied, 95-2962 (La.2/9/96), 667 So.2d 534. Plaintiffs do not contend irreparable injury will result from the denial of their motion for summary judgment. Thus, that motion is not properly before the court on this appeal. Although we have the power to exercise our supervisory jurisdiction over this matter, we decline to do so. See Bailey, 95-0616 at p. 3 n. 1, 665 So.2d at 18 n. 1.

GRANTING OF GEICO'S MOTION FOR SUMMARY JUDGMENT
The judgment granting GEICO's motion is final, and thus appealable, as it dismisses plaintiffs' suit. La. C.C.P. art. 2083(A). Thus, we shall address plaintiffs' remaining assignments of error regarding the granting of GEICO's motion.

A. Law Regarding Summary Judgment
The issue in this case, whether an insurance policy provides coverage as a matter of law, is one which can properly be resolved by summary judgment. La. C.C.P. art. 966(F); *848 Moyles v. Cruz, 96-0307, p. 3 (La.App. 4th Cir. 10/16/96), 682 So.2d 326, 328. The applicable standard of review is de novo, using the same criteria used by the district court in deciding whether summary judgment should be granted. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991).
A motion for summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, show there is no genuine issue of material fact, so that the mover is entitled to judgment as a matter of law. When reasonable minds must inevitably conclude the mover is entitled to judgment as a matter of law on the facts before the court, summary judgment is warranted. Bijou v. Alton Ochsner Medical Found., 95-3074, p. 6 (La.9/5/96), 679 So.2d 893, 897. Summary judgment is favored under Louisiana Code of Civil Procedure article 966(A)(2).

B. Legal Sufficiency of UM Waiver
In Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), the Louisiana Supreme Court set forth the requirements for a valid rejection of UM coverage under Louisiana law. The court noted Louisiana Revised Statute 22:1406(D)(1)(a) requires UM coverage in an amount not less than the limits of bodily injury liability provided by the policy unless the insured rejects the coverage in writing or selects lower limits. The insured has three options: UM coverage equal to bodily injury limits, UM coverage lower than those limits, or no UM coverage. The insurer must make the insured aware of these options. Tugwell, 609 So.2d at 197.
For a rejection to be valid, the insured or his authorized representative must expressly state in a document that UM coverage is rejected as to a particular policy. The document must also show the insured was aware of his options. In Tugwell, the court suggested an insured's awareness of options could be shown by a written acknowledgement that he has been so informed, or by the design of the application itself "in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses." 609 So.2d at 199.
GEICO chose to provide its insureds with a straightforward explanation of the law regarding UM coverage and a series of boxes whereby the insured could choose UM limits higher, lower, or equal to the bodily injury limits. The form is titled "LOUISIANA INFORMATION AND OPTION FORM." Beneath that title is printed "UNINSURED MOTORIST BODILY INJURY COVERAGE (Includes Underinsured Motorist Bodily Injury Coverage)." The form then has four paragraphs explaining the purpose of UM insurance and paraphrasing the UM statutes, as interpreted by Tugwell, as follows:
In accordance with Louisiana law, we are required to provide Uninsured Motorist Bodily Injury Coverage equal to your Bodily Injury Liability limit.
The law, however, provides that you, at your option and in writing, may select a lower or higher Uninsured Motorist Bodily Injury Coverage limit. Please note that you cannot choose a limit less than $10,000/ $20,000, unless you reject this coverage completely.
The law also contains a provision whereby Uninsured Motorist Bodily Injury Coverage may be omitted from your policy by written agreement between you and your insurance company. Although we encourage everyone to carry this coverage, we will omit it if you request us to do so. Uninsured Motorist Bodily Injury Coverage includes Underinsured Motorist Bodily Injury Coverage and protects you if you are injured in an automobile accident and the party at fault does not have enough Bodily Injury Liability (BI) Coverage to cover the cost of your injuries.
The policy then instructs the insured to mark one of a series of boxes to either select the level of coverage desired or to reject coverage. Mrs. Orillion originally checked the box beside "$10,000/$20,000 (Minimum Limit)," but she scratched through the check mark and placed an "×" in the box beside the following rejection language: "I reject the coverage altogether and agree that it will not be offered to me again at any subsequent *849 endorsement, renewal, reinstatement or substitute policy issued by the company or any of its associates, unless I request it in writing." She then signed Mr. Orillion's name to the form.
Following the series of boxes, in all capitals and bold print and following the words "IMPORTANT NOTICE" is this language:
IF YOU DO NOT COMPLETE, SIGN AND RETURN THIS FORM TO US, YOUR POLICY WILL BE ADJUSTED TO INCLUDE UNINSURED MOTORIST BODILY INJURY COVERAGE (INCLUDING UNDERINSURED MOTORIST BODILY INJURY COVERAGE) AT THE LIMIT EQUAL TO YOUR BODILY INJURY COVERAGE LIMIT. THE COVERAGE CAN ONLY BE DELETED FROM YOUR POLICY OR THE LIMIT REDUCED WHEN YOU RETURN THIS FORM INSTRUCTING US TO DO SO.
Plaintiffs contend that GEICO failed to provide them with a clear and unmistakable, informed rejection opportunity and that the above language leads to "utter confusion." We disagree. We fail to see how GEICO could have explained the law and the insureds' options any more clearly than it did.
Plaintiffs contend in their brief that they were confused because one of the choices of UM coverage limits was $50,000/$100,000, an amount equal to their bodily injury (BI) coverage. They contend later in the same brief that the form is "blatantly defective" because it does not give them the opportunity to select UM coverage equal to the BI limits but instead states the policy would be adjusted to include UM coverage equal to the BI limits if they did not return the form. In fact, plaintiffs could have had UM coverage equal to their BI coverage by either checking the box equal to their limits or by operation of law had they not returned the form. This argument is meritless.
The Fourth Circuit Court of Appeal considered the exact same GEICO rejection form in Bryk v. Brock, 95-0889 (La.App. 4th Cir. 10/26/95), 663 So.2d 522. While decisions of our sister circuits are not binding on us, they can certainly be persuasive authority. Although the facts were slightly different (the plaintiff was a guest passenger rather than the policyholder), the fourth circuit considered and rejected many of the same arguments made by plaintiffs herein. We agree with the Bryk court that the language in GEICO's UM option form is unequivocal, clear, and in compliance with Tugwell's mandate to make the insured aware of his options.

C. Should the Policy Be Reformed?
Plaintiffs contend that even if the UM rejection form was legally sufficient, the policy should be reformed to include UM coverage for two reasons: (1) they were not sufficiently informed of their options, and (2) the policy fails to reflect the mutual intent of the parties due to mutual mistake. Plaintiffs argue that because the policy was obtained through telephone conversations with a GEICO representative and through the mail, without face-to-face contact with an insurance broker or agent, they were not sufficiently informed of their options and, further, that they did not know what UM coverage was.
Mrs. Orillion has a high school diploma and had worked as an executive secretary for Louisiana State Employees Group Benefits. She testified she did not read all of the form but assumed she had "full coverage." She stated, "I didn't read it any, any further; I don't imagine that I did orand since I have, I really don't understand it anyway, so I don't think that would have made a big difference."
Although the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, except in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights. Ray v. McLain, 106 La. 780, 790, 31 So. 315, 319 (1901); Sonnier v. Boudreaux, 95-2127, p. 7 (La.App. 1st Cir. 5/10/96), 673 So.2d 713, 717. Signatures to obligations are not mere ornaments, and it is incumbent upon the party signing such obligation to examine it before signing it in ignorance of its contents. Tweedel v. Brasseaux, 433 So.2d 133, 137 (La. *850 1983); Boullt v. Sarpy, 30 La.Ann. 494, 495, 37 La. 326, 327 (1878). GEICO's form clearly explained the coverage provided by UM insurance, encouraged the insured to buy it, and unambiguously explained the insured's options. Plaintiffs cannot defeat summary judgment simply by relying on Mrs. Orillion's testimony that she did not read the form she signed.
Plaintiffs also contend the insurance policy should be reformed to include UM coverage due to "mutual mistake." It is true that reformation, an equitable remedy, is available to correct mistakes in a contract when it has been written in terms which violate the understanding of both parties, i.e., when both have done what neither intended. Teche Realty & Inv. Co. v. Morrow, 95-1473, p. 4 (La.App. 3d Cir. 4/17/96), 673 So.2d 1145, 1147. Plaintiffs, however, have failed to even suggest any error on GEICO's part, much less to present that allegation in a form sufficient to defeat summary judgment.

D. Med Pay Claim
Plaintiffs contend the trial court erred in dismissing their entire suit in light of the extant med pay claim. GEICO contends in its appellate brief that it paid plaintiffs the med pay limits of $2,000.00, that plaintiffs' contention is thus moot, and that plaintiffs failed to raise this issue in the trial court.
The only evidence in the record regarding GEICO's payments under the med pay coverage is Mrs. Orillion's deposition testimony that GEICO was claiming or paid "[j]ust right at about $2,000." GEICO's motion for summary judgment requests dismissal of plaintiffs' suit based on the UM rejection; it does not mention the med pay claim. Plaintiffs thus had no reason to raise the med pay claim at the hearing on the motion for summary judgment on the UM claim. The trial court committed legal error in dismissing plaintiffs' entire suit when the med pay issue was not before it.

CONCLUSION
The UM rejection form signed by Mrs. Orillion was legally sufficient, and there was no legal basis for reforming the insurance contract. The trial court properly found that, as a matter of law, plaintiffs' UM claim should be dismissed, and we affirm that portion of the judgment. Plaintiffs' med pay claim remains extant, however, and thus we must reverse the portion of the judgment which dismisses the entire suit and remand this suit to the trial court for further proceedings on the med pay claim. Costs of this appeal are taxed to plaintiffs.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.