BYARD EDWARDS, JR.
v.
PAUL LARRY GREER AND/OR GREER INSURANCE SERVICES, L.L.C. AND FORTIS INSURANCE COMPANY
No. 2006 CA 2076.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
NOT DESIGNATED FOR PUBLICATION
BYARD EDWARDS, Jr. Hammond, Plaintiff-Appellant In Proper Person
JENEL G. SECREASE, Law Office of Byard Edwards, Jr. Hammond, Attorney for Plaintiff-Appellant Byard Edwards, Jr.
DONALD A. HOFFMAN, Mary Ann Wegmann Hoffman Seydel LLC New Orleans, Attorneys for Defendants-Appellees Paul Larry Greer and Greer Insurance Services, L.L.C.
K. WADE TRAHAN, PAUL J. HEBERT, Ottinger Hebert, L.L.C. Lafayette, Attorneys for Defendant-Appellee Fortis Insurance Company.
Before ARMSTRONG, KIRBY and BELSOME, JJ.[1]
JOAN BERNARD ARMSTRONG, Ad Hoc, Chief Judge.
The plaintiff-appellant, Byard Edwards, appeals the September 14, 2006 summary judgment dismissal of his claims against the defendants, Paul Larry Greer ("Greer"), Greer Insurance Services, L.L.C. ("Greer Insurance") and Fortis Insurance Company ("Fortis"). The defendants answered the appeal asking for damages for frivolous appeal. For the reasons hereinafter set forth, we affirm the judgment of the trial court and deny the defendants' request for damages for frivolous appeal.
The plaintiff's claim arises out of the fact that his major medical insurance policy with Fortis Insurance Company reimbursed him for less medical expenses in connection with his treatment for prostate cancer than he felt he had a right to expect. Fortis allowed the plaintiff a reduced rate of coverage on an "out-of-network" basis because the plaintiff elected to receive "out-of-network" medical treatment in Texas from a physician whom the plaintiff felt was superior to any in Louisiana. The plaintiff named Greer and his company as defendants based on allegations that Greer represented to him that his Fortis coverage would treat all doctors regardless of their location as "in-network" and that the plaintiff had a right to rely on Greer's apparent authority to bind Fortis in that regard. In other words, the plaintiff is suing for the difference between what he received pursuant to Fortis'"out-of-network" coverage and what he would have received based on "in-network coverage." The plaintiff is not alleging that Fortis denied coverage, or that Fortis failed to pay according to the provisions of its policy. Instead, the plaintiff alleges that the amount paid was less than what he was entitled to based upon his legitimate and reasonable reliance upon representations made to him by Fortis' agent, Greer. In addition to alleging a disputed material fact exists regarding the authority of Greer to bind Fortis by his representations to the plaintiff that the plaintiff had full "in-network" coverage nationwide, the plaintiff also contends that the contract is ambiguous and unclear and must be construed in his favor according to the undisputed rule that ambiguities must be construed in favor of the policy holder and against the insurer. The plaintiff does not allege that Greer represented to him that he would be compensated for any specific amount or at any specific rate or that he was promised any specific deductible. The plaintiff's complaint is based on the fact that Greer led him to believe that the Fortis policy did not distinguish between "in-network" coverage and "out-of-network" coverage.
The plaintiff contends that, contrary to what was represented to him by Greer, the "out-of-network" coverage under the Fortis policy has a $12,500.00 deductible and provides reimbursement for only 20% of the medical bill as opposed to an "in-network" deductible of only $2,500.00 (a savings of $10,000.00) and reimbursement of 80%.
The plaintiff further complains that at the time he was considering obtaining coverage with Fortis, Greer informed him that he did not need a "provider" book because Fortis was the largest insurance company in the United States and that any doctor would be covered as long as he did not go out of the United States, effectively implying that any doctor in the United States would be "in-network."
On June 13, 2001, the plaintiff signed a Louisiana Application for Medical Insurance specifying American LifeCare Company as the preferred provider network.
On July 25, 2001, Greer delivered the Fortis policy to the plaintiff who signed an acknowledgment that he received the policy. The Fortis Policy Schedule indicated that:
"For most services the Rate of Payment for a network provider is more than the Rate of Payment for an out-of-network provider . . . The list of network providers is subject to change. You are responsible for calling the network manager to verify the participation status of a provider prior to treatment. . ."
Contrary to what is alleged by the plaintiff, the policy sets forth an out-of-network rate of payment of 30% while the in-network rate of payment is 50%.
The plaintiff was also provided with a Fortis insurance card, which stated in bold, capital letters, "AUTHORIZATION REQUIRED. CALL 1-800-454-5105."
On November 7, 2001, pursuant to Greer's advice, the plaintiff submitted a written request to Fortis for a pre-determination of benefits from Fortis, seeking to have Dr. Slawin considered to be a network provider, concluding with this statement:
I am requesting that I be treated as a provider network benefit so that my out of pocket expense be minimized. Thank you.
Dr. Allen W. Manning, the plaintiff's local physician recommended that he have Dr. Slawin perform the prostate surgery because Dr. Slawin was deemed to be more qualified than the local urologist. Dr. Slawin knew how to perform nerve sparing surgery which was not available locally.
Prior to his treatment, the plaintiff was informed by faxed letter dated November 12, 2001 from the Scott Department of Urology at Baylor College of Medicine that:
Dr. Slawin is an out of network provider with Fortis (ppo) Insurance Co. Claims are paid only at 30% with out of network providers.. .
By letter dated November 14, 2001, the plaintiff sent the Scott Department of Urology a check in the sum of $5,961.20 to cover the 70% of the $8,516.00 cost not borne by Fortis. The plaintiffs surgery was performed a week later, on November 20, 2001. In this context, Mr. Willman, a gentleman consulted by the plaintiff because of his experience in the field to do an evaluation of the plaintiffs claim, was asked the following question when deposed:
Q. So from the standpoint of Byard Edwards' selection of Doctor Slawin to perform his prostate cancer surgery, whether or not he, Mr. Edwards, had received a provider network was irrelevant because he knew prior to the surgery that this man was not a network provider. Correct?
A. Yes.
On November 20, 2001, Dr. Slawin performed prostate surgery on the plaintiff at a cost of $39,296.99. Fortis paid $14,993.93 towards this amount, the out of network provider rate for the surgery. The plaintiffs expert, Mr. David Willman, was asked the following question when deposed:
Q. [A]fter reviewing the policy, the bills, invoices, constructing the ledger, your conclusion with regards to Fortis was that they paid in accordance to the terms and conditions of the policy, and no further funds or benefits are owed by Fortis as best you can determine at this time?
A. Yes.
Thus, with this testimony, the plaintiffs expert acknowledged that Fortis paid all sums due the plaintiff under the policy.
Mr. Willman went on to testify that he sold the plaintiff a Blue Cross Blue Shield ("Blue Cross") major medical policy after the plaintiff cancelled his coverage with Fortis. Mr. Willman testified that the directory of Blue Cross providers he furnished to the plaintiff was limited to either the Baton Rouge area or the New Orleans area, he was not sure which, but he also recalled that he informed the plaintiff that he could access the Blue Cross web site for provider information in other areas.
The affidavit of Susan Porter, Office Manager for Insurance Services of America, states that had the plaintiff been given a directory of network providers it would have been a Louisiana Directory which listed only those providers located in Louisiana. As Dr. Slawin is located in Texas he would not have been listed in the Louisiana directory. Therefore, even if the plaintiff had been furnished with a Louisiana directory, it would not have told him whether Dr. Slawin was an in-network provider or and out-ofnetwork provider. Consequently, the plaintiff's allegations concerning the failure of Greer and Fortis to furnish him with a Louisiana Directory of providers raises no genuine issue of material fact.
Mr. Willman, the plaintiff's expert, confirmed in his deposition that Dr. Slawin's name would not have appeared in a Louisiana directory.
The following facts are undisputed:
1. The plaintiff, an attorney, received the Fortis Policy on July 25, 2001, four months before his treatment.
2. The Fortis Policy provides coverage for both in-network and out-of-network providers.
3. The Fortis policy shows that the rate of payment for out-of-network providers is 30% and the rate of payment for in-network providers is 50%.
4. The Fortis Insurance Card requires the insured or the attending physician to telephone Fortis for authorization prior to receiving medical benefits.
The jurisprudence has consistently held that the insured is bound by the unambiguous language of his policy and cannot rely on representation of the agent to the contrary. In Bailey v. Robert V Neuhoff Ltd. Partnership, 95 0616 (La.App. 1 Cir. 11/9/95), 665 So.2d 16, the First Circuit noted that:
Furthermore, cases interpreting Louisiana Revised Statute 22:628 have held that the representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy. See, e.g., Sharff v. Ohio Cas. Ins. Co., 605 So.2d 657, 661, (La.App. 2d Cir.), writ denied, 608 So.2d 196 (La.1992); Marsh v. Reserve Life Ins. Co., 516 So.2d 1311, 1314 (La.App. 2d Cir.1987); see also 15 W. Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986 & Supp.1995).
Id., 95 0616, p. 8, 665 So.2d at p. 20, fn. 5.
In this way, Bailey calls our attention to La. R.S. 22:628 which in pertinent part prohibits verbal changes in policy language:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.
La. R.S. 22:628 applies to insurance policies in general. It is consistent with La. R.S. 22:213(1), which is among the provisions mandated by statute to be included in health and accident policies:
Entire contract: Changes: This policy, including the endorsements and the attached papers, if any, and in case of industrial insurance, the written application, constitutes the entire contract of insurance. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid until approved by an executive officer of the insurer and unless approval be endorsed hereon or attached hereto.
Form 236.010.LA of the Fortis policy in the instant case contains the following provisions:
Plan Changes[2]
No change in this plan will be valid unless approved by an executive officer of Fortis Insurance Company and attached to this plan. No agent or employee of Fortis Insurance Company has authority to waive or change any plan provision or waive any requirements within the application.
* * * *
Entire Contra[3]
This policy and the attached application constitute the entire contract.
Again, near the end of the policy this concept is repeated on Form 236.2961.LA:

ENTIRE POLICY[4]

The entire agreement is made up of this policy. . . .
The court in Marsh v. Reserve Life Ins. Co., 516 So.2d 1311, 1315 (La.App. 2 Cir. 1987) explained the public policy behind the statutes and the provisions such as those quoted from the Fortis policy above:
Plaintiffs allege they were assured by the insurance agent that the surgery would be covered under the policy provisions and that these representations were the major inducement for them in purchasing the policy. As noted above, the alleged representations by the insurance agent could not act to extend or enlarge the coverage afforded by the policy. The public policy reasons behind this rule of law are readily apparent. It insures that each party is aware of the other party's obligations under the terms of the policy. Therefore, the allegations of such conduct on the part of the insurance agent could not create or establish a genuine issue of material fact.
The same reasoning was expressed more succinctly in Sharff v. Ohio Cas. Ins. Co., 605 So.2d 657, 661(La.App. 2 Cir. 1992):
Policy coverage is determined by the written policy and cannot be extended or enlarged even by an agent's representations about coverage. LRS 22:628; Marsh v. Reserve Life Ins. Co., 516 So.2d 1311 (La.App. 2d Cir.1987); McDaniel v. Moore, 351 So.2d 855 (La.App. 2d Cir.1977).
Therefore, as a matter of law, as regards the plaintiff's claim under the Fortis policy, it is immaterial what representations Mr. Greer may have made to the plaintiff. The plaintiff's coverage claim boils down to an assertion that he should have received the same benefits for out-of-network coverage as would have been provided for in-network coverage. The policy clearly and unambiguously does not provide such coverage. On the third page of the policy entitled "Schedule" (Form 236.S0 1.LA) it is stated that:
For most services the Rate of Payment for a network provider is more than the Rate of Payment for an out-of-network provider.
This quoted passage is presented in clear, straightforward language. There is nothing ambiguous about it. The next page of this "Schedule" sets forth the actual schedule of payments, making it abundantly clear that there is a definite difference between the payment rates for in-network versus outof-network claims.
Therefore, we find no error in the summary judgment dismissal of the plaintiff's claims against Fortis.
As regards the plaintiff's claims against Mr. Greer and his agency, in addition to the foregoing analysis showing no claim under the policy we note that the front of the policy contains the very large, uppercase, boldface notice: "RIGHT TO EXAMINE FOR TEN DAYS." This warning is explained immediately thereafter:
Please read your policy carefully. If for any reason you are not satisfied, return it to us or our agent within 10 days after you have received it. All premiums will be refunded and your coverage will be void.
It is undisputed that the plaintiff received this policy several months before the events leading to this litigation began to unfold. The differences between in-network coverage and out-of-network coverage are so clearly and so immediately apparent in the policy, that we find as a matter of law the allegations of misrepresentation against Mr. Greer raise no genuine issue of material fact. There is no basis for the plaintiff's continued reliance on any alleged representations of in-network coverage once he had a reasonable chance to examine the policy.
As to the appellees' claim for frivolous appeal damages, we are guided by this Court's discussion of the issue in Troth Corp. v. Deutsch, Kerrigan & Stiles, L.L.P., 06-0457, p. 5 (La.App. 4 Cir. 1/24/07), 951 So.2d 1162, 1166:
La. C.C.P. art. 2164, which allows damages for a frivolous appeal, is penal in nature and must be strictly construed in favor of the appellant. Levy v. Levy, XXXX-XXXX, pp. 17-18 (La.App. 4 Cir. 10/2/02), 829 So.2d 640, 650. Appeals are favored in the law and no penalties should be awarded for a frivolous appeal unless it is manifestly clear that the appeal was taken solely for delay or that the appealing counsel does not sincerely believe in the view of the law that he is advocating. Haney v. Davis, XXXX-XXXX, p. 11, (La.App. 4 Cir. 1/19/06), 925 So.2d 591, 598. Any doubt regarding the frivolous nature of an appeal must be resolved in favor of the appellant. Id.

As stated in Tillmon v. Thrasher Waterproofing, XXXX-XXXX, p. 8 (La.App. 4 Cir. 3/28/01), 786 So.2d 131, 137, this court is reluctant to grant frivolous appeal damages because of the chilling effect it may have on the appellate process.
Accordingly, the mere fact that the plaintiff lost his appeal does not mean that it is frivolous. The fact that the plaintiff's appeal may even be considered to be weak in addition to being unsuccessful, does not mean that it is frivolous. The plaintiff appears to have held a sincere belief that he was misled and his appeal appears to have been sincerely pursued. It clearly was not filed for purposes of delay.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
BELSOME, J. DISSENTS WITH REASONS.
I join in the majority's decision to deny damages for frivolous appeal. I respectfully dissent from the majority's determination that no genuine issue of material fact exists with respect to whether Fortis' agent, Paul Greer, may be held liable for representations that he made to Mr. Edwards and upon which Mr. Edwards reasonably relied to his detriment.
Although I agree Louisiana jurisprudence holds that an agent may not enlarge or extend coverage beyond what is written in a policy, I disagree with the majority's contention that it is immaterial what representations Mr. Greer made to Mr. Edwards. The nature of Mr. Greer's statements to Mr. Edwards and the failure of Mr. Greer to deliver the provider book to Mr. Edwards with his policy create an issue of material fact as to whether Fortis and/or Mr. Greer may be held liable for Mr. Greer's representations to Mr. Edwards. The resolution of those issues should be left to the factfinder and not disposed of in a motion for summary judgment. Accordingly, I would reverse the summary judgment dismissal of claims against Fortis Insurance Company, Mr. Greer, and Greer Insurance Services L.L.C.
NOTES
[1] The Honorable Joan Bernard Armstrong, Chief Judge, the Honorable Michael E. Kirby, Judge, and the Honorable Roland L. Belsome, Jr., Judge, all members of the Fourth Circuit Court of Appeal, are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] Emphasis original.
[3] Emphasis original.
[4] Upper case original.