GUIDRY, J.
Defendant landowners appeal a judgment declaring a servitude in favor of their property to be less extensive than allegedly indicated in their act of sale.
FACTS AND PROCEDURAL HISTORY
On July 20, 2001, William and Jeanne Dalton purchased a 12-acre tract of land in Washington Parish.[1] The tract acquired by the Daltons fronted on Parker Road, a Parish blacktop road, on its southern-most boundary. In 1999, "a perpetual servitude of passage for a roadway over and across the existing gravel road which runs from the north margin of Parker Road" was established and recorded by the Daltons' predecessor in title.[2]
*624 In March 2003, the Daltons sold a three-acre plot from the above-referenced tract to Scott and Monica Amacker. The plot sold to the Amackers was not adjacent to Parker Road. Over six years later, on June 29, 2009, Rhonda Brehm purchased 5.994 acres of the aforementioned tract owned by the Daltons. The land purchased by Ms. Brehm included the southern-most portion of the Daltons' tract that fronted on Parker Road; however, as referenced in the 1999 right of way agreement, a gravel road, known as Morning Mist Lane, ran along the length of the eastern edge of both the Amackers and Ms. Brehm's properties and acted as a private roadway whereby both properties had access Parker Road.[3]
Despite the existence of Morning Mist Lane, troubles arose between the Amackers and Ms. Brehm regarding the width of the servitude of passage to Parker Road. On October 30, 2014, Ms. Brehm filed a "Petition for Possessory Action[,] Declaratory Judgment, Temporary Restraining Order, Injunctive Relief and Damages" against the Amackers, wherein she alleged that the Amackers had trespassed on and destroyed portions of her property, as well as interfered with her quiet and peaceful enjoyment of her property. Pursuant to a show cause order issued by the trial court, a hearing relative to Ms. Brehm's petition was held on November 20, 2014. The Amackers appeared at the hearing without legal counsel.
At the hearing, Mrs. Amacker testified that when she and her husband purchased their property from the Daltons in 2003, Mr. Dalton agreed to furnish a 60-foot right-of-way as indicated on a plat attached to their purchase agreement. Mrs. Amacker testified that the plat that was attached to the purchase agreement showed 12 acres with a 60-foot right-of-way running along the eastern edge of all 12 acres to Parker Road. Although Mrs. Amacker testified regarding the purchase agreement with the attached plat, and also about the act of sale whereby the Daltons acquired the land in dispute, the actual documents were not introduced into evidence at the hearing.
Ms. Brehm also testified at the hearing. She identified several photographs that were introduced into evidence. Some of the photos depicted Mr. Amacker and the Amackers' thirteen-year-old daughter driving on or along Morning Mist Lane on a four wheeler. One photo showed what appears to be five people riding on a four wheeler as it was being driven by Mr. Amacker. Other photos showed Mrs. Amacker, the Amackers' daughter, and some persons that Ms. Brehm identified as being guests of the Amackers, walking some distance from Morning Mist Lane in a grassy area adjacent to the gravel roadway. Ms. Brehm also identified some photos of flags that had been placed on her property by Mrs. Amacker to mark the distance of where the 60-foot servitude claimed by the Amackers would extend onto Ms. Brehm's property.
In identifying most of the photos, Ms. Brehm stated that she either took the photos personally or the photos were taken by security cameras that she had placed on her property.[4] She explained that some of *625 the photos introduced into evidence not only showed Mr. Amacker walking on her property some distance from Morning Mist Lane, but the photos also showed Mr. Amacker moving or tampering with Ms. Brehm's security cameras. Other photos identified by Ms. Brehm show grass that she claimed was "all torn up," missing, or dying because of people driving on her property, beyond the 60-foot servitude claimed by the Amackers.
Ms. Brehm also recounted how the Amackers had: removed flags she had placed on her property to mark areas that she believed were unsafe; tom down a gate at the entrance of Morning Mist Lane despite possessing a key to the gate; hindered a worker she had hired from constructing a fence on her property along the length of Morning Mist Lane; and played loud, vulgar music to disturb her peaceful enjoyment of her property.
In addition to the foregoing evidence, a copy of Ms. Brehm's June 29, 2009 act of sale, the 1999 recorded right of way agreement, and incident reports from the Washington Parish Sheriff's Office, were introduced into evidence.
After hearing the testimony[5] and considering the other evidence presented, the trial court ruled in favor of Ms. Brehm, declaring that her property was only subject to a servitude of passage the width of the existing gravel road, which is about 12 feet in width. The trial court assessed damages against the Amackers in the amount of $1,358.00, for the lost wages and emotional distress suffered by Ms. Brehm, plus court costs. The trial court also issued a permanent injunction against the Amackers prohibiting them and their agents, assigns, or anyone acting on their behalf from "veering off [Morning Mist Lane] onto [Ms. Brehm's] property harassing her, yelling at her, cursing her or her guests, and playing excessively loud music any time of the day or night such that it would interfere with [Ms. Brehm's] peaceful possession of her property." A written judgment to that effect was signed by the trial court on December 29, 2014.
Notice of the December 29, 2014 judgment was issued on January 13, 2015. Following the hearing, however, the Amackers secured legal counsel. On Friday, January 23, 2015,[6] counsel for the Amackers filed a pleading entitled "Motion to Enroll as Counsel of Record and Motion for New Trial." The trial court granted the motion to enroll and set the motion for new trial for a hearing.
In conjunction with the motion for new trial, Mrs. Amacker submitted an "Affidavit of Verification," wherein she stated that at the original hearing, she had attempted to introduce a certified copy of the credit sale by which she and her husband had acquired their property from the Daltons. She explained that she failed to do so because when she presented the document to counsel for Ms. Brehm, he "shook his head" and handed the document back to her. Mrs. Amacker also stated that she telephoned Mr. Dalton on October 28, 2014, at which time she stated that Mr. Dalton told her he "remembered establishing the sixty (60) foot servitude for the benefit of all four (4) of the three (3) acre tracts which he subdivided and sold," but *626 she did not receive Mr. Dalton's written confirmation of his recollections until January 22, 2015. The Amackers attached to their motion for new trial a copy of the January 22, 2015 correspondence from Mr. Dalton, which included a copy of a plat signed by the Amakers as purchasers and the Daltons as sellers. The Amackers also attached a copy of the credit sale whereby they acquired their property from the Daltons.
Prior to the hearing on the Amackers' motion for new trial, Ms. Brehm filed a motion for contempt, alleging that the Amackers had violated the court's December 29, 2014 judgment "by intimidating and threatening workers on [her] property and interfering with [her] peaceful enjoyment of her property." Accordingly, on March 16, 2015, the trial court considered both the Amackers' motion for new trial and Ms. Brehm's motion for contempt. Following a hearing, the trial court denied the Amackers' motion for new trial and granted Ms. Brehm's motion for contempt, finding that the Amackers had violated the December 29, 2014 judgment of the court. In a judgment signed April 20, 2015, the trial court ordered the Amackers to pay Ms. Brehm's attorney fees for the proceeding in the amount of $1,500.00, court costs in the amount of $340.00, and a fine in the amount of $250.00. The Amackers later filed a motion to devolutively appeal the December 29, 2014 and the April 20, 2015 judgments, which the trial court granted by an order signed May 15, 2015.
ISSUES PRESENTED FOR REVIEW
In this appeal, the Amackers raise the following issues for our consideration:
1. Whether the Motion for New Trial filed by the defendants-appellants was timely filed under Louisiana law.
2. Whether the defendants-appellants were entitled to a New Trial under Louisiana law.
3. Whether the defendants-appellants should have been found in Contempt of the Trial Court's December 29, 2014 Judgment, and whether the Motion for Contempt filed by the plaintiff-appellee should have even been considered by the Trial Court.
4. Whether Attorney's fees should have been awarded at all in connection with the Motion for Contempt filed by the plaintiff-appellee and, if so, what should the proper amount of such Attorney's fees have been?
DISCUSSION
Motion to Dismiss
After this matter was lodged with this court, Ms. Brehm filed a motion to dismiss the Amackers' appeal. Another panel of judges deferred ruling on the motion and instead referred the motion to our panel for consideration in connection with the instant appeal.
In her motion, Ms. Brehm first argues that the Amackers' appeal should be dismissed for failure to adhere to this court's briefing schedule. It should be pointed out that Ms. Brehm's motion to dismiss was filed in January 2016, following which additional extensions of the briefing deadlines were granted. In the last notice issued by this court, the Amackers were notified that their appeal would be dismissed if their brief was not filed with this court on or before May 6, 2017. An appellants' brief was filed by the Amackers on May 6, 2017. Thus, we find no merit in Ms. Brehm's request to dismiss the Amackers' appeal on the basis of their failure to comply with this court's briefing schedule.
As an alternative basis for her motion, Ms. Brehm asserts that the Amackers'
*627 appeal should be dismissed as untimely because they failed to perfect their suspensive appeal within 30 days of the appealable order or judgment. In this case, the hearing on the Amackers' motion for new trial was held on March 16, 2015, and the trial court pronounced the following ruling in open court at the conclusion of the hearing:
I find the motion was untimely filed. For that reason alone, I shouldn't consider it. But I did let them introduce their documents in case they want to appeal all this, and they feel like they didn't get a fair shot by not getting those documents. I don't think the documents, while relevant, does [sic] not prove that there is a sixty-foot right-of-way on the servitude going across Ms. Brehm's property.
Following this pronouncement, the trial court ordered counsel for Ms. Brehm to prepare a judgment. The written judgment, signed by the trial court on April 20, 2015, simply states that the "Motion for New Trial is denied." A motion for suspensive appeal was filed by the Amackers on April 15, 2015.
If an interlocutory judgment is one denying a new trial, the clerk of the trial court is required to mail notice of the denial to each party, and the delay for appealing the final judgment commences to run from the date the trial clerk mails notice of the denial. La. C.C.P. art. 1914(C). Although a notice of judgment appears in the record, the notice does not state the date of mailing, but appears to indicate that notice was issued by the trial clerk on the same date as the judgment was signed. Thus, using the April 20, 2015 date, the Amackers' appeal is clearly timely, as they filed their initial motion for a suspensive appeal on April 15, 2015, and later filed a motion to convert the suspensive appeal to a devolutive appeal on May 15, 2015.
Nevertheless, in her appellee's brief, Ms. Brehm additionally argues that the Amackers' appeal should be deemed untimely due to their motion for new trial being untimely filed. For the following reasons, we find that the Amackers timely filed the motion for new trial.
Under La. C.C.P. art. 1974, the delay for applying for a new trial is seven days, exclusive of legal holidays, with the delay commencing to run on the day after the clerk has mailed the notice of judgment as required by La. C.C.P. art. 1913. Once the seven-day period for filing a motion for new trial has passed, and no motion for new trial is filed or said motion is untimely filed, the judgment becomes final, and appellate delays begin to run. Nelson v. Teachers' Retirement System of Louisiana, 10-1190, pp. 4-5 (La. App. 1st Cir. 2/11/11), 57 So.3d 587, 589-590. An appeal may be taken by obtaining an order for appeal within the delay set forth by La. C.C.P. arts. 2087 or 2123. See La. C.C.P. art. 2121.
Article 2087 provides that an appeal that does not suspend the effect or execution of an appealable order or judgment may be taken within sixty days of either: (1) the expiration of the delay for applying for a new trial, as provided in La. C.C.P. art. 1974, if no application for new trial is timely filed; or (2) the date of notice of the court's denial of a timely motion for new trial. Article 2123 similarly provides that an appeal that suspends the effect or execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of either: (1) the expiration of the delay for applying for a new trial, as provided in La. C.C.P. art. 1974, if no application for new trial is timely filed; or (2) the *628 date of notice of the court's denial of a timely motion for new trial. The untimely filing of a motion for new trial does not interrupt the delay for timely taking an appeal, even if the trial court does not recognize the motion as untimely. Nelson, 10-1190 at p. 5. 57 So.3d at 590.
As previously mentioned, notice of the December 29, 2014 judgment was issued by the trial clerk on January 13, 2015. January 13, 2015 was a Tuesday; thus, the delay for applying for a new trial would have commenced on the following Wednesday. Moreover, the following Saturday, Sunday, and Monday, with the latter being a holiday in honor of Dr. Martin Luther King, Jr., were all legal holidays. See La. R.S. 1:55. Thus, excluding the legal holidays, the Amackers had until Friday, January 23, 2015, to file their motion for new trial.
The issue of the timeliness of the Amackers' motion for new trial was first raised by Ms. Brehm in her opposition to the motion. In her opposition, Ms. Brehm stated that the Amackers' motion for new trial was filed on January 23, 2015, but she nevertheless argued that the motion was untimely based on her contention that the motion had to be filed by January 21, 2015. On appeal, she now claims that because the trial clerk recorded the motion as being received on Monday, January 26, 2015, the motion was untimely.
The record before us contains copies of the fax cover sheets and transmission verification reports that were generated in connection with the Amackers' fax filing, all of which display a fax date of January 23, 2015. The record also contains copies of the "Fax Filing Confirmation" sheet issued by the trial clerk as well as a stamped copy of the Amackers' motion displaying January 26, 2015, as the date the motion for new trial was filed with the trial court. On July 16, 2016, this court issued an interim order directing the clerk of the trial court "to make a determination of the precise date on which appellants' Motion to Enroll and Motion for New Trial were fax-filed with the district court" and to supplement our record with that determination and any supporting documentation. Pursuant to that order, the chief clerk of the civil division of the trial court submitted an affidavit wherein she stated that faxed documents received before 4:30 p.m. are clocked in that business day; however, documents received after hours are clocked in the next business day. Thus, the chief clerk stated that "[t]he Motion to Enroll as Counsel of Record and Motion for New Trial in Docket No. 107519["]I" was clocked in by our office on January 26, 2015 at 8:01 am as seen in the appellate record on page 167, and a fax confirmation was sent at 8:51 am as seen in the appellate record at page 164."
Considering the transmission verification reports submitted by the Amackers in conjunction with the affidavit of the chief civil clerk of the trial court, it appears that counsel for the Amackers fax filed the motion for new trial after 9:00 p.m. on Friday, January 23, 2015.[7] A faxed filing is deemed complete at the time the facsimile transmission is received by the clerk of court. La. R.S. 13:850(A). The statute does not require that the transmission be received during the regular office hours of the clerk's office. Antoine v. McDonald's Restaurant, 98-1736, p. 4 (La. App. 3d Cir. 5/5/99), 734 So.2d 1257, 1259, overruled on other grounds by *629 Hunter v. Morton's Seafood Restaurant and Catering, 08-1667 (La. 3/17/09), 6 So.3d 152. Hence, a facsimile transmission is deemed timely if all of the other requirements of La. R.S. 13:850 are met, even if transmission is received after the regular office hours of the clerk's office, so long as the transmission is before the midnight deadline of the delay period. See Antoine, 98-1736 at p. 4, 734 So.2d at 1259 ; see also Lloyd v. Monroe Transit Authority ex rel. City of Monroe, 50,292, p. 8 (La. App. 2d Cir. 1/13/16), 185 So.3d 866, 870, writ denied, 16-0277 (La. 4/8/16), 191 So.3d 585 (wherein the Second Circuit agreed "with the Third Circuit's conclusion that the fax transmission need not be received during regular working hours so long as a transmission occurred before midnight on the final date for the running of a prescriptive period"). As the evidence in the record before us shows that counsel for the Amackers transmitted the fax filing before midnight on January 23, 2015, the motion for new trial was timely. Accordingly, we deny the motion to dismiss the Amackers' appeal.
Motion for New Trial
As we have found that the Amackers' motion for new trial was timely filed, we must now consider whether the trial court erred in denying the motion for new trial. In considering this issue, we must first reflect on the specific rulings made by the trial court in the judgment appealed, as well as the posture of the proceedings relative to the judgment rendered.
The denial of a motion for new trial is generally a non-appealable interlocutory judgment. However, an appellate court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. Bailey v. Robert V. Neuhoff Limited Partnership, 95-0616, pp. 4-5 (La. App. 1st Cir. 11/9/95), 665 So.2d 16, 18, writ denied, 95-2962 (La. 2/9/96), 667 So.2d 534. As this appeal relates to the propriety of the trial court's determination of the extent of the predial servitude, the issuance of injunctive relief, and the award of damages related thereto, we may consider the motion for new trial because it relates directly to those rulings by the trial court. See Bailey, 95-0616 at p. 4, 665 So.2d at 18. In this instance, we find the trial court's judgment to be clearly contrary to the law and evidence, and therefore, the trial court erred in denying the motion for new trial. See La. C.C.P. art. 1972(1).
These proceedings were instituted by Ms. Brehm in a petition filed on October 30, 2014, wherein she sought a declaratory judgment, injunctive relief, and damages. In her prayer for relief, Ms. Brehm specifically requested that the trial court: (1) issue a judgment declaring and recognizing that her property is only burdened by the predial servitude established under the 1999 right of way agreement; (2) issue a preliminary injunction prohibiting the Amackers from using any portion of Ms. Brehm's property beyond the predial servitude established in the 1999 right of way agreement and from interfering with her quiet and uninterrupted possession of her property; (3) issue a permanent injunction to enjoin the Amackers from using any portion of Ms. Brehm's property beyond the predial servitude established in the 1999 right of way agreement and from interfering with her quiet and uninterrupted possession of her property; and (4) award damages. The hearing notice issued by the trial court in connection with the show cause order directed the parties to show cause:
why a Judgment should not be issued declaring the servitude of passage to be limited to the gravel road and for the sole purpose of providing access to Defendant's property, issuing a preliminary injunction prohibiting Defendants from *630 using any portion of Plaintiff's property other than the existing gravel road as described in instrument registered in COB 497, folio 126; prohibiting Defendants from using the existing gravel road for any purpose other than the purpose conferred in instrument registered in COB 497, folio 126; and prohibiting Defendants from interfering with Ms. Brehm's quiet and uninterrupted possession of the property.
At the November 20, 2014 show cause hearing, the Amackers appeared as self-represented parties. Following the hearing, the trial court rendered judgment declaring the predial servitude at issue to be the extent of the gravel road described in the 1999 right of way agreement. The trial court also permanently enjoined the Amackers from using any portion of Ms. Brehm's property outside of the gravel road established in the 1999 right of way agreement and permanently enjoined the Amackers from harassing Ms. Brehm in any way. Finally, the trial court awarded Ms. Brehm damages in the total amount of $1,785.06. No reference to a preliminary injunction appears in the judgment.
While in some cases the merits of an action may be decided during an interlocutory proceeding, this is only where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction. Adler v. Williams, 16-0103, p. 11 (La. App. 1st Cir. 9/16/16), 203 So.3d 504, 514. In this case, although the show cause hearing notice did reference declaratory relief and the trial court did declare at the commencement of the show cause hearing that the matter to be heard was Ms. Brehm's "Petition for Possessory Action, Declaratory Judgment, and Temporary Restraining Order with Injunctive relief and damages," as pro se litigants, it cannot be said that the Amackers' failure to raise any objection to the hearing notice or the trial court's declaration regarding the scope of the hearing was an "express" agreement to submit the case for final decision at the hearing on the rule for a preliminary injunction.
Normally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 08-0510, p. 4 (La. App. 1st Cir. 9/23/08), 995 So.2d 32, 35, writ denied, 08-2554 (La. 1/9/09), 998 So.2d 726. Whereas, a permanent injunction may be issued only after a trial on the merits at which the burden of proof is a preponderance of the evidence. 200 Government Street, LLC, 08-0510 at p. 5, 995 So.2d at 36. The principal demand for a permanent injunction can only be definitively disposed of after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction might have addressed issues on the merits. McCurley v. Burton, 03-1001, p. 4 (La. App. 1st Cir. 4/21/04), 879 So.2d 186, 189.
In this case, we find that the trial court exceeded the parameters of its authority in granting a declaratory judgment, permanent injunctions, and awarding damages pursuant to the hearing for preliminary injunctions. Thus, the December 29, 2014 judgment must be vacated.
Contempt Ruling
As to the trial court finding the Amackers in contempt of its December 29, 2014 judgment, we find merit in their assertion that such a determination was unwarranted considering their timely filed *631 motion for new trial. In this instance, the trial court found the Amackers to be in constructive contempt, as it found them to be in "[w]ilful disobedience of [a] lawful judgment ... of the court." See La. C.C.P. art. 224(2). Although a trial court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person wilfully disobeyed a court order in violation of Article 224(2) must be based on a finding that the accused violated an order of the court "intentionally, knowingly, and purposefully, without justifiable excuse." Lang v. Asten, Inc., 05-1119, pp. 1-2 (La. 1/13/06), 918 So.2d 453, 454. In Lang, the Louisiana Supreme Court held that the parties found in contempt by the district court in that case were clearly justified in failing to obey the district court's order because the order the parties disobeyed was the subject of a motion for new trial, followed by an immediate appeal. Lang, 05-1119 at p. 2, 918 So.2d at 454.
Likewise, we find the fact that the Amackers filed a motion for new trial and later an immediate appeal of the December 29, 2014 judgment in this case constitutes reasonable justification for their failure to strictly adhere to the prohibitions of the December 29, 2014 judgment. This finding is further supported by the evidence presented during the hearing on the motion for contempt.
At that hearing, Ms. Brehm testified that she filed the motion for contempt because the Amackers interfered with the construction of a fence along Morning Mist Lane. She stated that the Amackers advised the worker she had hired to construct the fence that legal proceedings were still pending regarding the servitude. As such, Ms. Brehm said that the Amackers showed the worker documents and threatened to call the sheriff's office if he continued constructing the fence.
At the contempt hearing, Mr. Amacker admitted approaching the worker and informing him "[w]ell, do you know we hired an attorney and we are objecting to the judgment ruling, so you might want to get a hold of Mr. Danenhower [counsel for Ms. Brehm]." Mr. Amacker further testified that the worker told him that if Mr. Amacker could show proof that there was a sixty foot right-of-way, he would take it into consideration. Mr. Amacker said he then told the worker that he would have Mrs. Amacker bring "something" to the worker and that he, Mr. Amacker, would contact his legal counsel and not the police. Mrs. Amacker also testified at the hearing and corroborated the testimony of her husband. She further stated that she gave several documents to the worker and told him "[j]ust so you honestly can't say you don't know."
Thus, considering this evidence and the jurisprudence, we reverse the judgment of contempt and the resulting penalties imposed therewith, which would include the award of attorney fees. Accordingly, as result of this determination, we pretermit consideration of the final issue raised by the Amackers in this appeal regarding the award of attorney fees.
CONCLUSION
For the foregoing reasons, we vacate the December 29, 2014 judgment. We further reverse the April 20, 2015 judgment denying the Amackers' motion for new trial and holding them in contempt of court, and instead render judgment granting the Amackers' motion for new trial. Finally, we remand this matter to the trial court for further proceedings consistent with this opinion. All costs of this appeal are equally assessed to the parties.
DECEMBER 29, 2014 JUDGMENT VACATED; APRIL 20, 2015 JUDGMENT REVERSED; MOTION FOR
*632 NEW TRIAL GRANTED AND CASE REMANDED FOR FURTHER PROCEEDINGS.
Crain, J. agrees in part and concurs in part (part vacating contempt order)

A plat and other evidence in the record before us indicate that the tract owned by the Daltons was comprised of 12 acres.

The trial court recognized, and the parties have essentially confessed, that the gravel road running along the eastern border of the parties' property has been established as a "perpetual servitude" based on the "Right of Way Grant" executed by Philip Kenneth Parker and Wood Scales, Inc. in June 1999; however, we observe that the servitude created in that document describes the servitude as being located on the property of Philip Parker rather than Wood Scales, Inc., which is parties' predecessor in title. Specifically, the document recites:
[F]or a valid consideration of $500.00, and in order to eliminate any question as to the right of way to the property of Wood Scales, Inc. appearer, Philip Kenneth Parker herein grants and establishes for the sole use and benefit of Wood Scales, Inc., its successors and assigns, and in favor of the above described property of Wood Scales, Inc. a perpetual servitude of passage for a roadway over and across the existing gravel road which runs from the north margin of Parker Road across the property of Philip Kenneth Parker as described hereinabove to the above described property of Wood Scales, Inc.
According to the 1999 document, Parker's property was located in Section 38, Township 4 South, Range 12 East in Washington Parish, whereas the property of Wood Scales, Inc. (as well that of the parties to this dispute) was located in Section 54, Township 4 South, Range 12 East in Washington Parish. The 1999 document was recorded in the conveyance records of Washington Parish at COB 497, folio 126.

The municipal addresses of the parties' respective properties are shown as being located on Morning Mist Lane.

Ms. Brehm also identified two photos of what she stated was a gate lying on the ground. She stated those photos were taken by her fiancé, Gilly Charbonnet, while he was accompanied by a sheriff's deputy who was investigating why the gate had been torn down.

Mr. Amacker also made some remarks throughout the hearing, although he was not formally called to testify. As the court explained, "a lot of time people representing themselves testify in lieu of asking questions," so the trial court had Mr. and Mrs. Amacker both sworn in at the beginning of the hearing.

As will be discussed later in this opinion, the parties acknowledge and the record supports the conclusion that the Amackers' motion for new trial was fax filed on January 23, 2015.

According to the transmission verification reports, counsel for the Amackers faxed the motion to the trial court at 9:02 p.m. and served counsel for Ms. Brehm with the motion via fax at 9:21 p.m.