STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1452

RHONDA BREHM

VERSUS

SCOTT AMACKER and MONICA AMACKER

Judgment Rendered: **SEP 2 1 2020**

* * * * * * *

On Appeal from the 22nd Judicial District Court
In and for the Parish of Washington
State of Louisiana
Trial Court No. 107519

Honorable Reginald T. Badeaux, III, Judge Presiding

* * * * * * *

Trent P. Temples
Bogalusa, Louisiana

Attorney for Defendants/Appellants,
Scott Amacker and Monica Amacker


Chad A. Danehower
Covington, Louisiana

Attorney for Plaintiff/Appellee,
Rhonda Brehm

* * * * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

*Higginbotham, J. concurs in modifying the width of the servitude to reflect that it is actually 60 feet wide.*

**PENZATO, J.**

This is a suit for declaratory judgment and injunctive relief filed by Rhonda Brehm against Scott and Monica Amacker regarding the extent of a servitude of passage across Ms. Brehm's property. Defendants appeal a judgment decreeing that plaintiff's property is subject to a servitude of passage limited to an existing gravel road.

## FACTS AND PROCEDURAL HISTORY

On July 20, 2001, William and Jeanne Dalton, the parties' predecessor in title, purchased a 12-acre tract of land in Washington Parish, Louisiana. The property's southern-most boundary fronted Parker Road, a parish blacktop road. The Daltons' act of sale described the property and then recited:

> This tract contains 12.00 acres of land, all as more fully shown on survey by Land Surveying, Inc., dated July 18, 2001, under No. 9343, a copy of which is annexed hereto and made a part hereof.

The attached survey showed a dashed line running from Parker Road parallel to the tract's eastern border, marked as a 60-foot right-of-way. The Daltons' act of sale further provided that it was subject to the following servitude of passage established and recorded in 1999 by the Daltons' predecessor in title: "a perpetual servitude of passage for a roadway over and across the existing gravel road which runs from the north margin of Parker Road." The gravel road, known as Morning Mist Lane, ran along the length of the eastern edge of the Dalton property. The 60-foot right-of-way shown on the July 18, 2001 survey followed Morning Mist Lane.

The Daltons subdivided the 12-acre tract into four, three-acre parcels and listed the parcels for sale. Only the southern-most parcel fronted Parker Road; Morning Mist Lane provided access to Parker Road for the remaining three parcels.

In March 2003, the Daltons sold the northern-most parcel to the Amackers. The act of sale described the property and recited the following:

2

This tract contains 3.00 acres, all as more fully shown on survey of Jeron R. Fitzmorris, Land Surveying, Inc. dated February 20, 2003 under No. 10,018, a copy of which is annexed hereto and made a part hereof.

The attached survey showed a dashed line marked as a 60-foot right-of-way running parallel to the tract's eastern border and extending across the adjacent property to Parker Road.

In September 2003, the Daltons sold two of the parcels to Lindsley Scott Crain. By credit sale dated September 5, 2003, the Daltons sold to Mr. Crain the three-acre tract that fronted Parker Road. Following the property description, the act recited:

All as more fully shown on survey of Land Surveying, Inc., Jeron R. Fitzmorris, Registered Land Surveyor, dated August 15, 2003 under No. 10,282.

A copy of the August 15, 2003 survey was attached to the credit sale and showed a dashed line marked as a 60-foot right-of-way running from Parker Road parallel to the tract's eastern border. By "Dation en Paiement" dated March 3, 2009, Mr. Crain transferred the property back to the Daltons.

Also on September 5, 2003, the Daltons sold Mr. Crain the parcel adjacent to the one that fronted Parker Road. The property description recited that the described property was:

All as more fully shown on survey of Land Surveying, Inc., Jeron R. Fitzmorris, Registered Land Surveyor, dated August 19, 2003 under No. 10,283.

A copy of the August 19, 2003 survey was attached to the credit sale and showed a dashed line marked as a 60-foot right-of-way running parallel to the tract's eastern border and extending across the adjacent property to Parker Road. This parcel was acquired by Adair Asset Management at the 2009 Washington Parish Tax Sale, and was subsequently acquired by Ms. Brehm on October 16, 2013, by Quit Claim Deed.

3

On June 29, 2009, the Daltons sold two parcels to Ms. Brehm. One was the three-acre tract fronting Parker Road that the Daltons had previously sold to Mr. Crain. The act of sale provided that the property being purchased by Ms. Brehm was described "[A]ccording to a plat of survey by Land Surveying, Inc. dated August 15, 2003." The act of sale further recited that a copy of the survey was annexed to the act of sale. The second parcel was the tract adjacent to the Amackers' property. It was described as being "[A]ccording to a plat of survey by James J. Jones & Associates, Inc., Land Surveyors, dated June 12, 2009." According to the act of sale, a copy of the survey was annexed to the act of sale. The June 12, 2009 survey indicates that it was prepared for Ms. Brehm, and showed a dashed line running parallel to the tract's eastern border and extending across the Amackers' property to the north and the adjacent property to the south to Parker Road. The area between the dashed line and the property's eastern border was marked as a 60-foot right-of-way. The survey also showed a gravel road drawn in the approximate center of the right of way.

The Amackers moved to their property on Morning Mist Lane in 2014, and issues arose between them and Ms. Brehm regarding the Amackers' use of the right-of-way. On September 18, 2014, Ms. Brehm prepared and recorded in the conveyance records of Washington Parish a document entitled "Amendment to Right of Way Grant." In this "Amendment," Ms. Brehm referenced the June 12, 2009, August 15, 2003, and August 19, 2003 surveys that were included in the acts by which she acquired her property, and "amended" them from a 60-foot right-of-way to a 12-foot right-of-way across Morning Mist Lane. She further forbid the use of recreational vehicles on the right-of-way, forbid minors from operating any sort of vehicle on the right-of-way, and imposed a 20 mile-per-hour speed limit.

Thereafter, on October 30, 2014, Ms. Brehm filed a "Petition for Possessory Action[,] Declaratory Judgment, Temporary Restraining Order, Injunctive Relief

4

and Damages" against the Amackers. Ms. Brehm alleged that the Amackers trespassed on her property by driving and walking off Morning Mist Lane onto her property, damaged her property, and deprived her of the liberty of enjoying her property. Ms. Brehm sought: (1) a judgment declaring and recognizing that her property is only burdened by the predial servitude established in the 1999 right-of-way grant; (2) a preliminary injunction prohibiting the Amackers from using any portion of her property beyond the predial servitude established in the 1999 right-of-way grant and from interfering with her quiet and uninterrupted possession of her property; (3) a permanent injunction enjoining the Amackers from using any portion of her property beyond the predial servitude established in the 1999 right-of-way grant and from interfering with her quiet and uninterrupted possession of her property; and (4) damages. Pursuant to a show cause order issued by the trial court, a hearing relative to Ms. Brehm's petition was held on November 20, 2014.

Following a hearing, the trial court ruled in favor of Ms. Brehm. A judgment was signed on December 29, 2014, declaring that Ms. Brehm's property was subject to a servitude of passage limited to the existing gravel road known as Morning Mist Lane. The judgment further ordered that the Amackers and their agents and assigns were permanently enjoined from using, possessing, traveling, or walking on any portion of Ms. Brehm's property other than on Morning Mist Lane, and from harassing Ms. Brehm in any way, including yelling at her or playing excessively loud music at any time. The judgment also awarded Ms. Brehm damages in the amount of $1,360.06, for lost wages and emotional distress suffered by Ms. Brehm, plus court costs.

The Amackers filed a motion for new trial, which was denied following a hearing. The Amackers appealed both the December 29, 2014 judgment and the judgment denying their motion for a new trial.

5

On appeal, this court found that the trial court erred in denying the motion for new trial and, further, that it exceeded the parameters of its authority in granting a declaratory judgment, permanent injunctions, and awarding damages pursuant to the hearing for preliminary injunctions. *Brehm v. Amacker*, 2015-1531 (La. App. 1 Cir. 12/7/17), 236 So. 3d 621, 629-30. The December 29, 2014 judgment was vacated, the judgment denying the Amackers' motion for new trial was reversed, and judgment was rendered granting the Amackers' motion for new trial. The matter was remanded to the trial court for further proceedings. *Id.* at 631.

The matter came before the trial court for a new trial on January 2, 2019. At the conclusion of the testimony, the trial court took the matter under advisement. On March 21, 2019, the trial court issued reasons for judgment and a judgment decreeing that Ms. Brehm's property was subject to a servitude of passage limited to the existing gravel road known as Morning Mist Lane. The judgment further ordered that the Amackers and their agents and assigns were permanently enjoined from using, possessing, traveling, or walking on any portion of Ms. Brehm's property other than on Morning Mist Lane, and from harassing Ms. Brehm in any way, including yelling at her or playing excessively loud music at any time. The judgment also awarded Ms. Brehm damages in the amount of $6,000.00, plus court costs.

The Amackers appealed, asserting that the trial court erred in finding that they did not own and possess a 60-foot right-of-way servitude over the eastern edge of the property belonging to plaintiff.

## LAW AND DISCUSSION

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State through Department of Transportation & Development*, 617 So. 2d 880, 882 (La. 1993). However, where one or more legal errors interdict the fact-finding process, the manifest error standard no longer applies. *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510.

A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 735. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Id.*

A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners. La. C.C. art. 646. There must be a benefit to the dominant estate. The benefit need not exist at the time the servitude is created; a possible convenience or a future advantage suffices to support a servitude. La. C.C. art. 647. The owner of the servient estate is not required to do anything. La. C.C. art. 651. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. *Id.*

Predial servitudes may be natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner. La. C.C. art. 654.

Predial servitudes may be established by an owner on his estate or acquired for its benefit. La. C.C. art. 697. The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the rules set forth in La. C.C. arts. 698 through 774. See La. C.C. art. 697. A right of passage is an example of a predial servitude. See La. C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title

provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. C.C. art. 705. The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. La. C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. La. C.C. art. 722. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. C.C. art. 730.

A servitude of passage is created when one subdivides property by plat of survey that designates a right-of-way or servitude of passage and thereafter sells one or more tracts of land by reference to said survey, regardless of whether or not the instrument in question specifically describes or makes reference to the servitude. *Bernard v. Broussard*, 538 So. 2d 1093, 1094 (La. App. 3 Cir.), writ denied, 542 So. 2d 1381 (La. 1989). Where an act of sale is silent as to an easement, but the survey plat referred to in the property description, which was attached to a previous act of sale that was recorded in the conveyance records, indicated that there was an easement, a servitude is created. *Templeton v. Jarreau*, 2018-0240 (La. App. 1 Cir. 9/24/18), 259 So. 3d 356, 362.

In this case, all of the relevant title documents were admitted into evidence. After reviewing the evidence in its entirety, the trial court concluded that the Amackers failed to meet their burden of proof to establish that the servitude of passage located on Ms. Brehm's property was anything more than the existing gravel road identified as Morning Mist Lane. The trial court found that none of the exhibits introduced at the trial constituted a title creating the disputed 60-foot servitude, and therefore, nothing in any of the evidence established that a 60-foot right-of-way existed on Ms. Brehm's property.

The issue herein of whether the relevant documents created a servitude is similar to the issue presented in *Triangle Development, Inc. v. Burns*, 469 So. 2d 29 (La. App. 1 Cir. 1985). In *Triangle Development*, plaintiff prepared a plan and plat to develop a twenty-acre parcel of property. The tract fronted 660 feet on Lee Hughes Road on the east, and extended west to a depth of 1,320 feet. Plaintiff divided the tract into parcels measuring 330 feet by 132 feet, each fronting on a 50-foot road that ran from east to west down the center of the tract. Plaintiff sold the parcels by acts which referenced an attached survey. The survey showed the north and south lines of each lot extending out into the blacktop road on the east and to the center of broken parallel lines on the south, which lines were similar to the delineation of the Lee Hughes Road (though the area within the lines was unnamed and not designated as a "road"). *Id.* at 29-30. The defendants claimed that there was no servitude. In finding that a servitude had been established the court stated:

> It was the clear intention of plaintiff, as developer of the subdivision, to create a servitude of passage for all of the lots in its proposed subdivision to connect with Lee Hughes Road on the east. Without the servitude, all of the lots that did not front on Lee Hughes Road would be inaccessible, and it would be impossible to develop the subdivision. This intention of plaintiff is reflected in the survey of August 29, 1978, referred to and attached to the act of sale from plaintiff to defendants' ancestors in title. It was also referred to in the sale to defendants. ...

> It is clear that the servitude was established by title in accordance with [La.] C.C. art. 740. The sale from [plaintiff] to defendants' ancestor in title created the servitude. Attached to that act of sale was a plat depicting the servitude, and the description in defendants' title referred to the survey attached to the previous sale. *Id.* at 30.

At the trial of this matter, Mr. Dalton's deposition was introduced into evidence. In his deposition, Mr. Dalton testified that when he acquired the 12-acre tract, he thought it was probable that he would sell off parts of the property. With that intent, he had the property surveyed and included a 60-foot right-of-way to provide access to Parker Road. He testified that a 60-foot right-of-way was consistent with his experience as being wide enough for fire department regulations.

Mr. Dalton further testified that the survey, which included the 60-foot right-of-way, was recorded. Mr. Dalton's intention to create a servitude was clear, and was reflected in the July 18, 2001 survey.

In addition, surveys were prepared in connection with the sales of each of the four parcels. The sales from the Daltons to Mr. Crain referred to surveys dated August 15, 2003 and August 19, 2003. Both surveys depicted the 60-foot servitude. The sale from the Daltons to Ms. Brehm referenced the June 12, 2009 survey **prepared for her** in connection with the sale, as well as the August 15, 2003 survey prepared for Mr. Crain. The June 12, 2009 survey depicted the 60-foot servitude. Moreover, Ms. Brehm was aware of the 60-foot servitude, as is evidenced by her attempt to amend it to a 12-foot right of way by act dated September 18, 2014.

Thus, we find that the trial court erred in finding that a 60-foot servitude was not established by the sales from the Daltons to the parties. We therefore reverse that part of the March 21, 2019 judgment decreeing that Ms. Brehm's property was subject to a servitude of passage limited to the existing gravel road known as Morning Mist Lane, and prohibiting the Amackers from using, traveling, or walking on any portion of Ms. Brehm's property other than on Morning Mist Lane. The Amackers are entitled to use of the 60-foot right-of-way in accordance with the rules set forth in the La. Civil Code.[1]

## CONCLUSION

For the above and foregoing reasons, the March 21, 2019 judgment of the trial court is affirmed in part and reversed in part. We reverse that part of the judgment decreeing that Ms. Brehm's property was subject to a servitude of passage limited to

---

[1] The Amackers do not assign error to the trial court's rulings ordering that they are permanently enjoined from harassing Ms. Brehm in any way, including yelling at her or playing excessively loud music at any time; and awarding Ms. Brehm damages in the amount of $6,000.00, plus court costs. Thus, these rulings are not subject to review in this appeal. See Rule 1-3, Uniform Rules—Courts of Appeal; Hurst v. Cirrus Allied, 2017-0731 (La. App. 1 Cir. 1/8/18), 241 So. 3d 1177, 1181. Moreover, given the evidence in the record, we do not find that the interest of justice clearly requires review of these rulings.

the existing gravel road known as Morning Mist Lane, and prohibiting the Amackers from using, traveling, or walking on any portion of Ms. Brehm's property other than on Morning Mist Lane, and render judgment that Scott and Monica Amacker are entitled to use of the 60-foot right-of-way in accordance with this opinion. The remainder of the judgment permanently enjoining the Amackers from harassing Ms. Brehm in any way, including yelling at her or playing excessively loud music at any time, and awarding her damages in the amount of $6,000.00, plus court costs, is affirmed. Costs of this appeal are assessed against plaintiff, Rhonda Brehm.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**